IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SUSAN GOODLAXSON, et al.,** | * | |
| **Plaintiffs,** | * | |
| v. | * | **CIVIL NO. JKB-21-1454** |
| **MAYOR AND CITY COUNCIL OF BALTIMORE,** | * | |
| | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Pending before the Court is a Joint Motion for Preliminary Approval. (ECF No. 121.)[1] The parties ask that the Court: (1) preliminarily approve the Partial Consent Decree (the "Decree") pursuant to Federal Rule of Civil Procedure 23(3)(2); (2) certify the proposed settlement class; (3) appoint Named Plaintiffs as class representatives; (4) appoint Plaintiffs' attorneys as class counsel under Rule 23(a); (5) approve the proposed notice; and (6) set deadlines for objections and a final fairness hearing. (*Id.*) For the reasons that follow, the Motion will be granted.

### I.   Factual and Procedural Background

In June 2021, Plaintiffs filed this putative class action against the Mayor and City Council of Baltimore (the "City"). (ECF No. 1.) This case stems from Plaintiffs' allegations that the City failed to comply with Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). (*Id.*) In particular, Plaintiffs alleged that:

---

[1] The parties filed the Motion incorrectly. Rather than file the Motion and related documents as a single filing with attachments, the parties filed the documents as separate docket entries. (*See* ECF No. 121 (Motion); (ECF No. 122 (Memorandum); ECF Nos. 123–27 (Affidavits and related exhibits); ECF No. 129 (Proposed Order).) The parties should have filed all of the documents as attachments to ECF No. 121. The parties were advised of this error by the Clerk's Office on December 2, 2024 (ECF No. 128), but did not file a corrected Motion. While the Court will not require the refiling of the currently pending Motion and related documents, the parties are advised to file any future motions correctly, and to heed any additional QC Notices they received from the Clerk.

> The City of Baltimore's curb ramps, sidewalks, and pedestrian right-of-way are dilapidated, disintegrating, and filled with objects such as telephone poles, trash, and trees, making everyday travel difficult and dangerous for the thousands of people with mobility disabilities who call Baltimore home or visit for work or pleasure. Individuals with mobility disabilities are unable to travel freely around Baltimore because of these conditions, injuring their right to engage fully in Baltimore's civic life.

(*Id.* ¶ 2.) Plaintiffs alleged that "[a] substantial number of the street crossings within the City's pedestrian right-of-way do not comply with applicable federal regulations addressing accessibility for people with mobility disabilities." (*Id.* ¶ 4.) Plaintiffs Susan Goodlaxson, Janice Jackson, and Keyonna Mayo are individuals with mobility disabilities, and Plaintiff IMAGE Center of Maryland ("IMAGE") is a non-profit independent living center that "advocates and promotes independent living for all persons with disabilities living in Central Maryland, including Baltimore." (*Id.* ¶¶ 6–7.) Plaintiffs sought injunctive and declaratory relief. (*Id.* ¶¶ 13, 88–90.)

Since the filing of this case, the parties engaged in numerous settlement discussions. The first session was held before Judge Charles Day in November 2021. In March 2022, the Court ordered the Parties to file a joint proposal identifying the scope of documents that would facilitate the Parties' settlement discussions. (ECF No. 40.) In April 2022, the Court approved the Parties' Joint Proposal on Settlement-Related Discovery. (ECF No. 43, 44.) The proposal included 16 categories of documents to be produced by Baltimore to the Plaintiffs on topics including the construction and repair of curb ramps, sidewalks, roads, streets, and highways. (*Id.*)

The Parties engaged in settlement negotiations in the summer and fall of 2022. (*See, e.g.*, ECF Nos. 61, 65.) Thereafter, the Plaintiffs requested that the Court appoint a mediator to facilitate further settlement negotiations. (ECF No. 71.) The case was referred to Judge Susan Gauvey for settlement. (ECF No. 73.) Since that referral, "the Parties have attended dozens of mediations and settlement discussions, including with the direct involvement of the Named Plaintiffs and the City Solicitor, the City's Budget Director, Director of the Department of Transportation, ADA

Compliance Officer, and Department of Transportation Engineers." (ECF No. 122 at 7–8.) During the settlement discussions, the parties kept the Court apprised of the case's status, filing various Status Reports. (*See, e.g.*, ECF Nos. 89, 95 (reporting that the parties had engaged in multiple settlement conferences and discussions with Judge Gauvey, with more scheduled); ECF No. 100 (explaining that the parties continued to engage in settlement discussions, and were scheduling a meeting with the City Solicitor); ECF No. 109 (explaining that the parties continued to engage in settlement discussions, and that the parties engaged in "an intensive information exchange" and that they were "scheduling a second conference with the City Solicitor and budgetary representatives").)

In a June 2024 Status Report, the Parties reported that they had reached a settlement agreement in principle and were finalizing the documents to memorialize that agreement. (ECF No. 112.) The Parties continued to finalize the agreement, which was ultimately approved by Baltimore's Board of Estimates. (*See* ECF Nos. 115, 117, 119.) Now pending before the Court is the Parties' Joint Motion for Preliminary Approval. (ECF No. 121.)

## II. Terms of the Partial Consent Decree

The Partial Consent Decree contains several requirements. (*See* ECF No. 123 at 37–68.) The Decree requires Baltimore to spend a minimum amount of funds per fiscal year[2] for four years (the "Annual Commitment") to (1) install accessible curb ramps at existing corners of Baltimore's pedestrian right of way and (2) remediate non-compliant existing curb ramps and pedestrian walkways. (ECF No. 122 at 9.)[3] Baltimore must spend $8 million in FY2024–25, and $12 million

---

[2] The City's fiscal year runs from July 1 to June 30 of the following year. (ECF No. 123 at 8.)

[3] Curb ramps and pedestrian walkways that are installed or remediated through new construction or alterations will be paid for separately from this Annual Commitment. (ECF No. 122 at 9.) The Decree also requires that the City ensure that all future construction and alteration work on curb ramps and pedestrian walkways be in compliance with disability access standards. (*Id.* at 11.)

3

per year for FY2025–26, FY2026–27, and FY2027–28. (*Id.*) The Decree directs an allocation of funds between curb ramps and sidewalks such that:

> [T]he City will be spending between $5.6–$7 million on curb ramp accessibility and between $2.4–$3 million on pedestrian walkway remediation in FY 2024-25; between $7.8–$8.125 million on curb ramp accessibility and between $4.2–$4.325 million on pedestrian walkway remediation in FY 2025-26; between $7.8–$8.125 million on curb ramp accessibility and between $4.2–$4.325 million on pedestrian walkway remediation in FY 2026-27; and between $7.8–$9.75 million on curb ramp accessibility and between $4.2–$5.25 million on pedestrian walkway remediation in FY 2027-28.

(*Id.* at 10.) As explained by Plaintiffs' counsel:

> In practice, because the average cost of installing and/or remediating curb ramps is currently about $10,500 per ramp, this means that the Annual Commitment should yield approximately 533–667 curb ramps in FY 2024-25, 742–773 curb ramps in FY 2025-26, 742–773 curb ramps in FY 2026-27, and 742–928 curb ramps in FY 2027-28. The average cost per square foot of remediating pedestrian walkways is approximately $31.50 per square foot, meaning that the Annual Commitment should yield approximately 76,190–95,238 square feet of accessible pedestrian walkways in FY 2024-25; 133,333–138,889 square feet of accessible pedestrian walkways in FY 2025-26; 133,333–138,889 square feet of accessible pedestrian walkways in FY 2026-27; and 133,333–166,667 square feet of accessible pedestrian walkways in FY 2027-28. By comparison, over the past several years, the City has installed or remediated far less than 400 curb ramps per year, and has not performed any sidewalk remediation.

(ECF No. 123 at 9–10.)

If Baltimore receives more Highway User Revenue funding than anticipated from the State of Maryland in any given year, Baltimore will commit additional funding to the Annual Commitment. (ECF No. 122 at 9.) The Decree also provides that, if Baltimore becomes unable to appropriate the funds required to meet the Annual Commitment in a given year, the Parties will meet and confer about alternatives. (*Id.*)

The Decree includes additional requirements summarized in the parties' briefing, including programs and activities aimed at remediating walkways such as inspections, meetings with utility companies and other regarding obstructions, and clearing obstructions; the enhancement of the

4

City's 3-1-1 program; the appointment of a City ADA coordinator; and more. (*See* ECF No. 122 at 11–13.)

The Decree only partially resolves the pending litigation. Thus, as the parties explain:

> [T]he Partial Consent Decree sets forth the Parties' plan for future negotiations and a stay of litigation (and administrative closure of the case, except as needed for dispute resolution). In particular, twelve months before the expiration of the term, the Parties shall begin negotiating a plan to install and/or remediate the City's remaining curb ramps and pedestrian walkways such that all curb ramps and pedestrian walkways will be accessible. [Decree] at § III.C. Any agreement resulting from such negotiations will be the subject of a subsequent consent decree. *Id.* If the Parties are unable to reach an agreement through these future negotiations, the stay will lift and either party may request that the Court administratively re-open the case for further litigation.

(ECF No. 122 at 13.)

### III. Settlement Approval Procedure

Approval of a class action settlement under Federal Rule of Civil Procedure 23 proceeds in two stages. At the first stage, the court examines the terms of the proposed settlement to determine whether it is "within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object." *CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, Civ. No. DKC-21-1778, 2023 WL 6125531, at *4 (D. Md. Sept. 19, 2023) (citation and quotation marks omitted). Further, "[w]here a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed. R. Civ. P. 23(a) and at least one of the subsections of Fed. R. Civ. P. 23(b)." *Curry v. Money One Fed. Credit Union*, Civ. No. DKC-19-3467, 2021 WL 3212584, at *2 (D. Md. July 29, 2021) (citation omitted). At the second stage, after a final fairness hearing, the Court approves the settlement if the proponents of the settlement satisfy their burden of showing that it is fair, adequate, and reasonable. *Id.*

### IV. Class Certification

Plaintiffs propose the certification of the following Settlement Class:

5

> All persons (including residents of and/or visitors to the City of Baltimore) with any Mobility Disability, who, at any time prior to court judgment granting final approval to this Partial Consent Decree have been denied full and equal access to the City's pedestrian right of way due to the lack of a Curb Ramp or a Pedestrian Walkway or Curb Ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use.

(ECF No. 122 at 15 (alterations omitted).)[4]

Federal Rule of Civil Procedure 23 sets out the requirements for the certification of a class. "A plaintiff seeking class certification bears the burden of proving the proposed class complies with the requirements of Rule 23." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011).

### A. Rule 23(a) Requirements

A plaintiff seeking class certification must establish that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively.

Here, the numerosity requirement is readily satisfied, given the Parties' representation that there are nearly 50,000 persons living in Baltimore with ambulatory difficulties. (*See* ECF No. 122 at 16.)

The commonality requirement is likewise satisfied. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation and quotation marks omitted). To satisfy this requirement, the claims "must depend upon a common contention . . . . That common contention,

---

[4] The capitalized terms are all defined in the Decree. (*See* ECF No. 123 at 39–42 (defining Mobility Disability, Curb Ramp, and Pedestrian Walkway).)

moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Here, common questions—such as whether the City triggered certain accessibility requirements and whether City's street crossings comply with the ADA and Section 504—would generate common answers. Moreover, "[i]n a lawsuit wherein individuals with varying disabilities challenge policies and practices that affect all of the putative class members, factual differences regarding their disabilities does not defeat commonality." *Bumgarner v. NCDOC*, 276 F.R.D. 452, 456 (E.D.N.C. 2011).

The typicality requirement is also satisfied. "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citation and quotation marks omitted). In short, a "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67. "Although a representative's claims and the claims of other members of the class need not be perfectly identical or perfectly aligned, the representative's pursuit of his own interests must simultaneously tend to advance the interests of the absent class members." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (citation and quotation marks omitted). Here, the claims of the Named Plaintiffs are typical of those of the proposed class: : they arise out of the City's alleged failure to install, remediate, and maintain curb ramps and walkways, and the claims are based upon the City's purported violations of the ADA and Section 504.

The adequacy requirement is also satisfied. Rule 23(a)'s adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The

7

Court discerns no conflict between the Named Plaintiffs and the Settlement Class.[5] *See Harris v. Rainey*, 299 F.R.D. 486, 491 (W.D. Va. 2014) ("As with commonality and typicality, the total overlap of the relief sought by all plaintiffs demonstrates that the adequacy of representation requirement is met.")

### B. Rule 23(b) Requirements

"In addition to meeting the requirements of Rule 23(a), a class must also qualify under one of the three 'types' of classes set forth in Rule 23(b)." *Harris*, 299 F.R.D. at 491 (citing *Gray*, 444 F. App'x at 700)). Rule 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Rule 23(b)(2) is "is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." Rule 23(b)(2) advisory committee's note. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (citation and quotation marks omitted). The Court concludes that this requirement is met, given that Plaintiffs allege that the City has failed to bring its sidewalks and walkways into compliance with the ADA and Section 504. Indeed, "suits brought for injunctive relief alleging civil rights violations are precisely the type of suit for

---

[5] Furthermore, the Court does not find that IMAGE is an inadequate Named Plaintiff because it is an organization. *See Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268–69 (4th Cir. 1981) ("[T]he status of an organization to proceed as a class representative should not be defeated solely because the organization is not itself, technically, an individual member of a class." (internal quotation marks and citation omitted)).

which Rule 23(b)(2) was intended to provide class certification." *Harris*, 299 F.R.D. at 494. As the parties explain in their briefing, "[t]he injunctive relief sought by Named Plaintiffs involves City-wide policy changes and systems development and implementation, such as ensuring that the City adopts policies and practices to install and maintain accessible curb ramps and sidewalks, that will inevitably apply to and benefit all class members." (ECF No. 122 at 23.)

Based upon the foregoing, the Court concludes that the Settlement Class should be certified and that Plaintiffs Goodlaxson, Jackson, Mayo, and IMAGE should be appointed as Named Plaintiffs.

### C. Class Counsel

Federal Rule of Civil Procedure 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and in so doing must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

The Court has reviewed the briefing and in particular the Declaration of Linda Dardarian. (*See* ECF Nos. 122, 123.) Counsel have done significant work to identify and investigate the claims in this action, have much relevant experience handling class actions of this nature, are knowledgeable regarding the applicable law, and have expended and will continue to expend resources in representing the Settlement Class. (*See* ECF No. 123 at 17–30 (Dardarian Declaration).) The Court concludes that the appointment as class counsel of Disability Rights Advocates, Disability Rights Maryland, Fox & Robertson, and Goldstein, Borgen, Dardarian & Ho is appropriate.

## V. Settlement Agreement

The parties also seek the Court's preliminary approval of the Decree. Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval," and Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re Lumber Liquidators Chinese-Mfd. Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020). As noted above, the Court need only determine whether the Settlement Agreement is "within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object." *CASA de Md.*, 2023 WL 6125531, at *4 (citation and quotation marks omitted).

### A. Fairness

In determining a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (quoting *Jiffy Lube*, 927 F.2d at 159). The focus of the fairness prong is "the procedural propriety" of the agreement. *Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC-11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (citation and quotation marks omitted).

10

The Court concludes that the Decree is sufficiently fair as to warrant preliminary approval. While the case—procedurally speaking—is not very advanced, nor has any formal discovery occurred, the parties engaged in a vigorous informal discovery process. (*See* ECF No. 123 at 5.) Further, the record reflects numerous settlement discussions, both between the parties and before Judge Gauvey, that were hard fought and conducted at arm's length, and involved discussions with many stakeholders. (*See, e.g., id.* at 5–6.) Finally, Counsel are experienced in the area of class action litigation. (*Id.* at 17–30.)

### B. Adequacy

In assessing the adequacy of a proposed settlement, the Court must consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The focus of the adequacy prong is "the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citations and quotations omitted).

The Court concludes that these factors weigh heavily in favor of preliminary approval. Class Counsel have secured significant benefits for the Settlement Class, which go straight to the heart of Plaintiffs' allegations and will result in the City's remediation of alleged access barriers. While Plaintiffs presented a strong case, there exist great risks in proceeding to litigation in a case such as this one. As the parties explain, to succeed in this litigation, "Plaintiffs would have to prevail on a contested motion for class certification, have summary judgment granted in their favor

11

on liability, engage in protracted fact and expert discovery battles, win a fact-intensive case at trial that would delve into many complicated issues about the City's current and historic construction and maintenance policies and practices concerning the pedestrian right of way as well as the City's finances and operational capabilities for fixing access barriers going forward, and fight off any appeals." (ECF No. 122 at 29.) The parties also explain that "this case is a matter of first impression in the Fourth Circuit, and the caselaw on sidewalk access is unsettled." (*Id.*; *see also* ECF No. 123 at 32 (explaining that the Fourth Circuit has not addressed whether pedestrian walkways are "services, programs, or activities" within the meaning of Title II of the ADA).)

The Court also finds that the anticipated duration and expense of additional litigation also weigh in favor of preliminary approval. This case has not yet reached formal discovery, and a resolution would be years away should the case proceed. Although it will take time for the benefits of the Decree to be fully realized, it provides more immediate relief to the Settlement Class than would protracted litigation.

The Court does not find that the solvency of Baltimore presents a barrier to preliminary approval. The Decree provides flexibility to the City to account for fluctuations in the City's solvency. (*See* ECF No. 122 at 26 n.6; *see also* ECF No. 123 at 45 (Decree providing that, "if . . . the City is unable to appropriate the funds to meet the Annual Commitment due to a recession or elimination of a significant funding source for Installation and Remediation of Curb Ramps and Pedestrian Walkways," the Parties "shall meet and confer about an alternative Annual Commitment for the period that will be affected by the decrease in funding").)

The Court will assess the degree of opposition to the Settlement Agreement at the Final Approval Hearing.

Given the foregoing, the Court finds that the Decree warrants preliminary approval, given its adequacy.

### C. Reasonableness

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). However, it has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Id.* (citing *Sharp Farms*, 917 F.3d at 303–04). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, . . . it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.*

Here, the benefits provided to the Class Members are very valuable and may not have been realized absent a negotiated settlement. In short, the Court finds the Decree to be reasonable and that its proposed relief, in comparison to the likely costs, risks, and delay of trial and appeal, warrants its preliminary approval.

## VI. Notice to Class Members

Plaintiffs ask the Court to approve their proposed method of notifying Class Members. The Court will grant that request. Rule 23(c)(A) provides that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Here, the parties propose providing the Notice (available at ECF No. 123 at 83–91), which provides "(1) a brief statement of the case, the terms of the proposed Partial Consent Decree, and the claims being stayed; (2) the date and time of the fairness and/or final approval hearing; (3) the deadline for submitting objections; and (4) the webpage and contact information to obtain a copy

13

of the proposed Partial Consent Decree," as well as information regarding attorneys' fees and service awards. (ECF No. 122 at 33.) The parties propose translating the Notice into several languages including Spanish and Korean, and making the Notice accessible for blind and low-vision individuals. (*Id.* at 33–34.) Their distribution plan includes mailing the Notice to several relevant organizations listed at ECF No. 123 at 112–13,[6] having the City publish the Notice on the City's website for four consecutive weeks, and having the City publish the Notice once per week for four weeks in each of *The Baltimore Sun*, *The Baltimore Banner*, and *The Daily Record*. (*Id.* at 34.)

Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). Further, to satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 157–58 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). But such "[n]otice need not be perfect, and all class members do not have to actually receive notice in order to satisfy the requirements of Rule 23 and due process." *In re Mut. Funds Inv. Litig.*, Civ. No. JFM-04-15863, 2011 WL 1102999, at *1 (D. Md. Mar. 23, 2011). The Court concludes that the Notice program proposed by the Parties is appropriate and reasonably calculated to apprise the class members of this action and their options in connection therewith, and should therefore be approved.

---

[6] This list includes organizations such as Accessible Resources for Independence, the Kennedy Krieger Institute, the League for People with Disabilities, the Maryland Developmental Disabilities Counsel, and similar organizations.

### VII. Service Awards and Attorneys' Fees

The parties propose $10,000 in service awards to each named Plaintiff, to be paid separately from the Annual Commitment provided in the Decree. (ECF No. 122 at 15.) The parties also explain that "Class Counsel shall apply to the Court for fees, costs, and expenses for all work completed through the effective date of the Partial Consent Decree, and for fees, costs, and expenses incurred during the fourth year of the Partial Consent Decree," and that "[d]uring the first three years of the Partial Consent Decree, Defendant shall pay Plaintiffs all reasonable attorneys' fees, costs, and expenses incurred for monitoring, implementing, and administering the Partial Consent Decree, subject to an annual cap of $100,000." (*Id.*) The Court finds that the awards and attorneys' fees are sufficiently reasonable as to warrant preliminary approval.

### VIII. Conclusion

For the foregoing reasons, the Court will grant the Motion, and will, in the Order that accompanies this Memorandum, set in further dates and deadlines concerning the Final Approval Hearing.

DATED this 13 day of January, 2025.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
United States District Judge